UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| **Eric David Hoffert,** Petitioner -vs- **Dora B. Schriro, et al.,** Respondents | CV-08-1268-PHX-JWS (JRI) **REPORT & RECOMMENDATION On Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on July 9, 2008 (#1). On October 1, 2008 Respondents filed their Response (#12). Petitioner filed a Reply on December 4, 2008 (# 17).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's delayed direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

> Jeffrey S. was six or seven years old when he first met Defendant, a family friend. Defendant occasionally took Jeffrey and his sister on social outings. On the morning of July 29, 1997, Defendant was waiting in front of Jeffrey's school when Jeffrey, then nine years old, arrived by bus. Using a fabricated story, Defendant convinced Jeffrey to go with him in his vehicle. Defendant drove

> Jeffrey to Las Vegas, Nevada without the knowledge or permission of his parents. According to Defendant, he took Jeffrey because he believed his father was molesting him.
>
> During a five-day stay in a Las Vegas motel room, Defendant committed or attempted to commit various sex acts with Jeffrey. After leaving the motel, they stayed in the desert outside Las Vegas for two days. While in the desert, Defendant repeatedly attempted to convince Jeffrey to remove his clothing. Defendant then drove Jeffrey to a convenience store in Kingman, Arizona. Defendant released the boy at the store.

(Exhibit ZZ, Mem. Dec. at 2.) (Exhibits to the Answer, #12, are referenced herein as "Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

Petitioner was eventually arrested, and confessed to engaging in sexual conduct with the victim. (*Id.* at 3.) At trial, there arose the issue of the timing and location of the formation of Defendant's intent to commit the sexual offense.

> During the settlement of jury instructions, the court expressed concern about its jurisdiction to convict Defendant of kidnapping if he had not formed the intent to commit a sexual offense in Arizona. In order to make a record for appeal, the court decided to ask the jury in a special interrogatory when Defendant had formed his intent to commit a sexual offense. The interrogatory read: "Did the intent to commit a sexual offense exist before Defendant and Jeffrey [S.] arrived in Nevada?" The jury answered "No." Notwithstanding the jury's finding, the court ultimately ruled that Arizona had jurisdiction to charge Defendant with kidnapping.

(Exhibit KK, Mem. Dec. 1/31/06 at 8-9.)

Defendant was indicted on charges of kidnapping, and custodial interference. He was tried and convicted on both counts, and sentenced on July 30, 1999 to presumptive consecutive terms of 24 years and 8.75 years. (*Id.;* Exhibit J, R.T. 7/30/99.)

## C. PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, raising a single issue based on the "allegedly improper denial of a motion for new trial based on juror misconduct." (*Id.* at 3.) His convictions and sentences were affirmed by the Arizona Court of Appeals in a Memorandum Decision issued August 24, 2000 (Exhibit K). His petition for review to the Arizona Supreme Court was

summarily denied on March 21, 2001 (Exhibit L).

## D. PROCEEDINGS ON POST-CONVICTION RELIEF

### 1. First PCR Proceeding

Petitioner commenced his first PCR proceeding by filing a Notice of Post-Conviction Relief on May 15, 2001 (Exhibit M). Counsel was appointed, but subsequently filed a notice of inability to find an issue for review (Exhibit N). Thereafter, Petitioner filed a *pro se* Petition for Post-Conviction Relief (Exhibit O), arguing:

(1) he received ineffective assistance of appellate counsel and PCR counsel (*id.* at 1-3);

(2)(a) the jury instructions violated state statutes when they permitted conviction based upon a finding of intent not formed at the time of the abduction (*id.* at 3-7);

(2)(b) the trial court erred in failing to present a jury instruction, in accord with *U.S. v. Mann*, 811 F.2d 495 (9th Cir. 1987), that encompassed Petitioner's theory of the case, e.g. that the requisite intent was formed outside the state, and thus failed to establish a crime in Arizona (*id.* at 7-9);

(2)(c) Petitioner's "due process" rights were violated when the case was submitted to the jury based upon instructions for which there was no supporting evidence (e.g. Petitioner's sexual intent in the state of Arizona)(*id.* at 9-11);

(2)(d) Petitioner's "due process" rights were violated when jury instructions on the issue of intent shifted the burden of proof on that issue to Petitioner (*id.* at 11-12);

(3) Petitioner's "due process" rights were violated when the trial court instructed the jury that they could infer intent in Arizona from conduct in Nevada (*id.* at 13-15);

(4) Petitioner's "due process" rights, under *In re Winship*, 397 U.S. 358 (1970), *etc*, were violated by his conviction on insufficient evidence of the intent

- 3 -

| | |
|---|---|
| 1 | necessary to convict on the kidnapping charge, and the knowledge of no right |
| 2 | to take the victim on the custodial interference charge (*id.* at 16-19); |

(5) Petitioner's "due process" rights were violated by juror misconduct (*id.* at 19-30);

(6) Petitioner's "due process" rights were violated by a refusal to resentence Petitioner based on changes in the law (*id.* at 31-33).

The trial court found that Petitioner should be permitted a delayed appeal on the issue of the absence of intent in Arizona to inflict a sexual assault, and disposed of the remaining claims as either waived by failure to raise them on direct appeal, or being without merit. (Exhibit Q, M.E. 3/17/03.) The trial court expressly declined to address the claim of ineffective assistance of appellate counsel on the intent issue, finding it needed only to resolve "whether relief should be granted so as to allow an appellate court to determine, on the basis of a delayed appeal, an issue that should have been raised on the original appeal." (*Id.* at 2.) This outcome was reiterated in the trial court's Minute Entry (Exhibit S) in response to Petitioner's Motion for Reconsideration (Exhibit R).

Petitioner then filed (during the pendency of his delayed appeal) a separate Petition for Review (Exhibit U), asserting the trial court erred in denying his PCR petition with regard to his claims of ineffective assistance of appellate counsel on the issues of juror misconduct and the sentence on the custodial interference count. On July 20, 2004, the Arizona Court of Appeals denied review (Exhibit Y).

**2. Delayed Appeal**

The trial court having granted Petitioner a delayed appeal, the State filed its own petition for review, and Petitioner filed his own cross-petition and petition for review. The Court of Appeals denied the State's appeal and directed Petitioner to file a new petition for review. (Exhibit T, Order 7/2/03.) Petitioner filed through counsel an Opening Brief (Exhibit V) asserting the following issues for review:

(1) jury instruction error on the time and place of intent to commit a sexual

|   |     | offense (*id.* at 40-46); |
|---|-----|---|
|   | (2) | instructional error in the trial court's answers to the jury's questions on the intent issue (*id.* at 46-48); |
|   | (3) | violation of Due Process by convicting on a crime not proven (*id.* at 49-50); |
|   | (4) | lack of jurisdiction to convict without evidence of intent in Arizona (*id.* at 50-52); and |
|   | (5) | Petitioner was entitled to a direct verdict based upon the absence of intent in Arizona (*id.* at 53). |

The Arizona Court of Appeals denied the appeal, finding that the intent need not be formed at the time of the taking or while in Arizona, but could occur at any time or place that the restraint continued. (Exhibit Z, Mem. Dec.) The Court of Appeals did not expressly address Petitioner's Due Process claim, but affirmed the conviction and sentence for kidnapping. (*Id.* at 10.)

Petitioner filed a Motion for Reconsideration (Exhibit BB), arguing that the reasoning relied upon by the Court of Appeals to find jurisdiction violated Petitioner's Sixth Amendment right to notice of the charges. Petitioner referenced his due process rights, apparently solely for its extension of the Sixth Amendment to the states. (*Id.* at 4-6.) Petitioner also argued that basing jurisdiction upon the finding of the offense on Petitioner's return of the victim to Arizona meant that Maricopa County was the improper venue, and thus the court in that county lacked jurisdiction. (*Id.* at 6-12.) The Court of Appeals ordered supplemental briefing (Exhibit DD, Order 1/5/05), granted the motion of reconsideration, but merely amended its Memorandum Decision to refine the description of the timing and place of the offense so as to connect the abduction in Maricopa County with the sexual offense intent formed in Nevada (Exhibit DD, Order 2/16/05).

Petitioner filed a Petition for Review by the Arizona Supreme Court (Exhibit FF) reiterating his claims of (a) lack of jurisdiction; (b) erroneous jury instructions; (c) a denial of due process due to the failure to establish the elements of the crime; and (d) an erroneous instruction in response to the jury's questions. The Arizona Supreme Court summarily

denied review. (Exhibit HH, Order 10/24/05.)

The Arizona Court of Appeals issued its mandate and corrected Memorandum Decision on January 31, 2006 (Exhibit KK).

**2. Second PCR Proceeding**

On or about November 3, 2004 (during the pendency of his delayed direct appeal), Petitioner filed his second Notice of Post-Conviction Relief (Exhibit AA), asserting claims of a change in the law pursuant to *Blakely v. Washington*, 542 U.S. 961 (2004). That Petition was granted, and re-sentencing was ordered. (Exhibit GG, M.E. 7/15/05.)

**3. Third PCR Proceeding**

On November 22, 2005, while awaiting resentencing, Petitioner filed his third Notice of Post-Conviction Relief (Exhibit II). Counsel was appointed to address Petitioner's claims of ineffective assistance of counsel on his delayed direct appeal (Exhibit JJ, M.E. 12/9/5). Counsel filed a Notice (Exhibit LL) evidencing his inability to find a viable issue for review. Petitioner was granted leave to file a pro per petition (Exhibit MM, M.E. 3/22/6), which he did on May 3, 2006 (Exhibit NN), arguing that appellate counsel had failed to argue a controlling state court decision. The trial court summarily dismissed the petition. (Exhibit PP, M.E. 9/25/06.)

Petitioner filed a Petition for Review (Exhibit QQ) with the Arizona Court of Appeals, again asserting ineffective assistance. That petition was summarily denied on August 23, 2007 (Exhibit TT).

**E. RE-SENTENCING**

On June 12, 2007, as a result of the grant of relief in Petitioner's second PCR proceeding pursuant to *Blakely*, Petitioner was re-sentenced to concurrent sentences of 7 and 3.5 years in prison. (Exhibit SS.) (His original sentence was to consecutive terms of 24 years and 8.75 years. (Exhibit J, R.T. 7/30/99.) )

## F. PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - On July 9, 2008, Petitioner filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (#1) and Memorandum in Support (#3). Petitioner asserts three grounds for relief:

(1) violation of due process as a result of his conviction for conduct not prohibited by statute, based upon the absence of intent, while in Arizona, to inflict a sexual offense (Petition, #1 at 5; Memorandum #3 at 7-10);

(2) violation of due process based upon conviction without an essential element (intent) being found by the jury (Petition #1 at 6; Memorandum #3 at 11-13);

(3) violation of due process based upon the trial court's lack of jurisdiction due to the lack of intent formed within Maricopa County (Petition #1 at 7; Memorandum #3 at 13-17).

On July 23, 2008, the Court ordered (#5) service and an answer.

**Answer** - On October 1, 2008, Respondents filed their Answer (#12), arguing that Grounds 1 and 3 are procedurally defaulted and all grounds are without merit because the Arizona Court of Appeals' determination on the intent issue is binding on this Court. Respondents seek leave to address the merits of Ground 1 and 3 if the Court finds them exhausted.

**Reply** - On December 4, 2008, Petitioner filed his Rely (#17), arguing that:

(1) Respondents are not entitled to belatedly address the merits of Grounds 1 and 3 (*id.* at 1-2);

(2) he presented his claims in his Opening Brief on delayed direct appeal, in particular Ground 1 in Issue B(5) and Ground 3 by citing *Fiore v. White*, 531 U.S. 225 (2001) (*id.* at 2-5);

(3) presentation to the Arizona Court of Appeals is sufficient for exhaustion (*id.* at 5-6);

(4) he is actually innocent of kidnapping (*id.* at 6);

(5) Arizona law does not permit a conviction for kidnapping absent evidence of

the requisite intent in Arizona (*id.* at 6-9).

## III. APPLICATION OF LAW TO FACTS
### A. EXHAUSTION AND PROCEDURAL DEFAULT

Respondents argue that Petitioner's Grounds 1 and 3 are unexhausted, now procedurally defaulted, and thus barred from habeas review.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

### a. Proper Forum/Proceeding

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir.

2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).[1]

**b. Fair Presentment**

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented." That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C. § 2254; *Picard v. Connor,* 404 U.S. 270, 276-277 (1971). A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

**c. Application to Petitioner's Claims**

**Ground 1 - Conviction on Conduct not Prohibited** - In Ground 1, Petitioner argues that he suffered a violation of due process as a result of his conviction for conduct not prohibited by statute, based upon the absence of intent to inflict a sexual offense while in Arizona (Petition, #1 at 5; Memorandum #3 at 7-10)

In their Answer, Respondents correlate Ground 1 to Claims 1 and 2 in Petitioner's Opening Brief on delayed direct appeal, as recited in the brief's statement of "Issues Presented for Review." (#12 at 12-13.) However, those claims related to Petitioner's challenges to the jury instructions and responses to jury inquiries. (Exhibit V at 30.) Respondents correctly note that Petitioner did not assert either of those claims as federal due process claims.

However, in connection with his third claim, Petitioner asserted a due process

---

[1] Respondents argue (Answer, #12 at 13, n. 5) that presentation to the Arizona Supreme Court (not just the Arizona Court of Appeals) is required for exhaustion, citing *Baldwin v. v. Reese,* 541 U.S. 27, 30–33 (1999). The Ninth Circuit's subsequent reliance on *Swoopes* in *Castillo*, notwithstanding *Baldwin*, dispels this argument. Moreover, nothing in *Baldwin* precludes the reasoning in *Swoopes*. Nor does the language cited by Respondents from *State v. Ikirt*, 160 Ariz. 113, 117, 770 P.2d 1159, 1163 (1989), which predated the Arizona Supreme Court's decision in *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (Ariz.1989), on which *Swoopes* is based.

violation. (Exhibit V at 30.) As noted by Petitioner in his Reply, the claim in Ground 1 was presented in his Opening Brief on delayed direct appeal, in the discussion at issue "B.5". (Reply, #17 at 2-4.) Indeed, in that portion of the brief, Petitioner argued that due process precluded conviction for conduct not made criminal by the state's statutes, citing *inter alia*, *In re Winship*, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged") and *Fiore v. White*, 531 U.S. 225, 228-229 (2001) (state cannot "consistently with the Federal Due Process Clause, convict [ ]for conduct that its criminal statute, as properly interpreted, does not prohibit").

Respondents ascribe the discussion of *Winship* and *Fiore* to Petitioner's claims in Ground 2 based on jury instructions. (Answer, #12 at 13-14.) This appears to be the result of Petitioner's organization of the discussion of the issues in his Opening Brief, where he included his due process claim as point "B.5" in the major section (B) addressing the jury instructions. In addition, the numbering of the issues in the discussion did not correspond to his numbering in his statement of the issues because of the number of prefatory paragraphs. Thus, issue 1 is discussed at point "B.3"; issue 2 is discussed at point "B.4", etc. However, despite the labeling, Petitioner plainly asserts a due process claim under *Winship* and *Fiore*. His clear identification of the claim in the summary of the "Issues Presented for Review," along with his clear discussion of the claim in the body of the brief, were a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. *Picard,* 404 U.S. at 276-277. The organization of the argument under the jury instructions section did not obfuscate the clear import of his argument.

Thus, the undersigned concludes that Petitioner's Ground 1 was fairly presented in his delayed direct appeal, and was properly exhausted.

**Ground 3 - Lack of Jurisdiction** - In Ground 3 of the Petition, Petitioner argues that he suffered a violation of due process based upon the trial court's lack of jurisdiction due to the lack of intent formed within Maricopa County. (Petition #1 at 7; Memorandum #3 at 13-17.)

Respondents correlate Ground 3 to Petitioner's fourth claim in his delayed direct appeal. (Answer #12 at 16-17.) That claim asserted the trial court did not have jurisdiction due to the lack of intent. (Exhibit V, Opening Brief, at 30.) Respondents assert that Petitioner did not assert this issue as a federal constitutional claim.

Petitioner's Reply affirms the correlation with his fourth claim ("C.2") on delayed direct appeal, but asserts that the argument on this claim must be read "in context" with the discussion of issue "B.5". (#17 at 4.)

Petitioner did not fairly present this claim. While the petitioner need not recite "book and verse on the federal constitution," *Picard*, 404 U.S. at 277-78 (quoting Daugherty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*). Section "C.2" did not reference any federal constitutional principles or federal authorities. And, nothing within his discussion of the claim in section "C.2" related back to his due process claims in section "B.5". While Courts regularly read the discussions of separate issues *in pari materia*, they are not obligated to presume that the separate arguments are all subsumed within each other. Petitioner points to nothing in his brief that would have suggested that Petitioner intended to engraft his constitutional arguments from section to section.

Accordingly, Petitioner failed to fairly present his jurisdictional argument as a federal claim, and thus failed to properly exhaust the claim in his Ground 3.

## 2. Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a

"miscarriage of justice" which would excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents summarily argue that Petitioner may no longer present his unexhausted claims to the state courts. Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a). (Answer, #12 at 17.) However, Rule 32.2(b) provides an exception for "claims for relief based on Rules 32.1. . . (f)." Similarly, the timeliness rules in Ariz. R. Crim. P. 32.4(a) are subject to exceptions for claims under "Rule 32.1...(f)."

Although the trial court does not cite Rule 32.1(f), it is the only provision for a delayed appeal in the Arizona rules. Rule 32.1(f) provides for delayed appeals where the "failure to file a . . . notice of appeal within the prescribed time was without fault on the defendant's part." Respondents do not establish why Petitioner could not be entitled to a second delayed appeal under Rule 32.1(f).

Granted, until this case, the undersigned had always read Rule 32.1(f) as applying to a simple failure to file a notice of appeal, and not to failure to brief particular claims. Without any authority to the contrary, the undersigned must assume that the trial court and court of appeals in this case have a better understanding of the import of Rule 32.1(f) as an authorization for delayed appeals when the appellant simply failed to assert a claim on direct appeal as a result of counsel's failures.[2]

**Summary re Procedural Default** - Petitioner has failed to exhaust his claim in Grounds 3 of the Petition. However, Respondents have failed to show that he is now procedurally barred from doing so. Accordingly, this claim is unexhausted.

/ /

---

[2] Here, the trial court simply found that the claims arising from the intent issue should have been raised by counsel in the original direct appeal. And, the court explicitly declined to address the normal ineffective assistance issues of deficient performance prejudice. (Exhibit Q, M.E. 3/24/03 at 2.) Nonetheless, the Arizona Court of Appeals summarized the grant of direct appeal as being based upon a finding that "appellate counsel had been ineffective." (Exhibit Z, Mem. Dec.10/21/04 at 3.) In any event, the delayed appeal was not based upon a simple failure to file a notice of appeal.

**3. Merits of Unexhausted Claims** -

As noted, ordinarily unexhausted claims must be dismissed. However, 28 U.S.C. § 2254(b)(2) provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Accordingly, the court is free to side step the exhaustion issue when it is more efficient or easier to dispose of a claim on its merits. *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). However, that only applies in limited circumstances where the petitioner has no hope of prevailing on the merits of his claim. "[A] federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

Here, for the reasons discussed below, the undersigned finds it "perfectly clear" that Petitioner's Ground 3 "does not raise even a colorable federal claim." *Id.* Accordingly, the undersigned will not dismiss Ground 3 for failure to exhaust.

**4. Summary re Exhaustion etc.**

Respondents concede the exhaustion of Ground 2. Despite Respondents' arguments, the undersigned has concluded that Ground 1 was exhausted, and that Ground 3, while unexhausted, is not procedurally defaulted, but is plainly without merit. Accordingly, the undersigned will address the merits of all three claims.

**B. MERITS OF CLAIMS**

All three of Petitioner's grounds for relief turn on one critical issue of state law: whether the Arizona kidnapping statute incorporates an abduction where the intent to commit the sexual offense is not formed until the defendant is outside the jurisdiction. If so, then there may be merit to Petitioner's claims that because the jury found that the intent was

1  formed long after the initial restraint, and in Nevada (or at least outside Maricopa County[3]),
2  then the jury instructions were defective, the court lacked jurisdiction, and he was convicted
3  without proof that he committed the crime.

4  Respondents requested the opportunity to address the merits of Grounds 1 and 3 if the
5  Court rejected their procedural default arguments. Because the undersigned finds that the
6  discussion of the merits of Ground 2 is dispositive of all three claims, no additional briefing
7  is required.

8  In disposing of Petitioner's delayed direct appeal, the Arizona Court of Appeals
9  concluded in its amended Memorandum Decision:

> There is nothing in the language of [the kidnapping statute] supporting Defendant's position that the element of intent serving to distinguish kidnapping from the lesser-included offense of unlawful imprisonment must exist at the time the victim is initially restrained. To the contrary, as long as the requisite intent is found to exist while the defendant is "restraining the victim, the elements of kidnapping are satisfied.

14 (Exhibit KK, Mem. Dec. at 5 (internal citations omitted).)

15  Petitioner argues that this flies in the face of Arizona Supreme Court law, citing *State*
16 *v. Eagle*, 196 Ariz. 188, 994 P.2d 395 (2000), *State v. Dietrich*, 178 Ariz. 380, 873 P.2d 1302
17 (1994), *State v. Viramontes*, 163 Ariz. 334, 788 P.2d 67 (1990), and *State v. Atwood*, 171
18 Ariz. 576, 832 P.2d 593 (1992). (Reply, #17 at 7.)

19  Respondents properly note that the state courts are the final arbiters of state law. A
20 state court determination of state law is not subject to review in a federal habeas court. *Bains*
21 *v. Cambra,* 204 F.3d 964, 971 (9th Cir. 2000) ("federal court is bound by the state court's
22 interpretations of state law"). However, the federal courts need not assume that an inferior
23 court intends to "overrule a long-standing and reasonable interpretation of a state statute by
24 that State's highest court." *Garner v. State of La.,* 368 U.S. 157, 169 (1961). Thus, if

---

[3] In criminal prosecutions, "proper venue is a jurisdictional requirement in Arizona." *State v. Agnew,* 132 Ariz. 567, 577, 647 P.2d 1165, 1175 (Ariz.App., 1982). However, Ariz. Rev. Stat. § 13-109(A) provides: "Criminal prosecutions shall be tried in the county in which conduct constituting any element of the offense or a result of such conduct occurred, unless otherwise provided by law."

Petitioner could establish such a favorable holding by the Arizona Supreme Court, he might be able to make out his claims.

Here, however, Petitioner fails to show that the Arizona Court of Appeals decision was contrary to Arizona Supreme Court precedent.

Petitioner argues that in *Eagle* the "Arizona Supreme Court 'makes clear' that in order for a knowing restraint to be considered kidnapping, it must be 'coupled with one or more of the specifically listed intentions.'" (Reply, #17 at 7 (quoting *Eagle*, 196 Ariz. at 190, 994 P.2d at 397).) However, Petitioner makes the logical jump that this coupling implies an identity in time. The Arizona Supreme Court made no such ruling in *Eagle*. That case was based upon a double jeopardy claim in a kidnapping and sexual assault prosecution, with the defendant asserting that because the intent to commit the sexual assault formed the basis for the kidnapping, the offenses were the same. The court rejected the claim, finding no identity between the offenses because "it is only the *intent* to commit a sexual offense on the victim that is required to complete the kidnapping." 196 Ariz. at 190, 994 P.2d at 397 (emphasis in original). In connection with that discussion, the court noted that the elements of kidnapping under the Arizona statute are "a knowing restraint coupled with one or more of the specifically listed intentions." The court did not consider whether the requisite intention had to be coterminous with the restraint, or could arise subsequently to the initiation of the restraint. Nor did the court address whether the requisite intention had to be formed inside the jurisdiction. Thus, nothing in *Eagle* precluded the outcome in Petitioner's delayed direct appeal.

Similarly, Petitioner relies upon the language in *Dietrich*, that the "distinguishing element between kidnapping and unlawful imprisonment is the perpetrator's state of mind, i.e., whether the unlawful imprisonment was accompanied with one of the enumerated intents set out in A.R.S. § 13-1304 so as to elevate the unlawful imprisonment to kidnapping." 178 Ariz. at 383, 873 P.2d at 1305. There, however, the court was addressing whether the evidence mandated a lesser included instruction on unlawful imprisonment because the defendant was so enraged or inebriated that he may have been incapable of forming the

specific intent necessary for kidnapping. *Id.* Again, there was no discussion on the timing or location of the formation of that intent.

Likewise, in *Viramontes,* although the court noted the combination of restraint and intent and found the requisite intent in a plan to commit child abuse by abandoning an infant in a cardboard box, at a fast food restaurant. 163 Ariz. at 336, 788 P.2d at 69 (1990). Again, no discussion of timing or location.

Finally, in *Atwood*, the Arizona Supreme Court concluded that "the state was required to prove only that defendant kidnapped the victim with the intent to commit a sexual offense" and need not show that the sexual offense was ultimately committed. 171 Ariz. at 624, 832 P.2d at 641-642, *overruled on other grounds*, *State v. Nordstrom*, 200 Ariz. 229, 241, 25 P.3d 717, 729 (2001). It is true that the court found that the prosecution had "presented evidence to the jury from which it could conclude that defendant had the intent to commit such an offense *when* he abducted her." *Id.* at 625, 832 P.2d at 642. However, there was no discussion about timing beyond this simple reference, and the evidence did not suggest a subsequently developed intention, but showed an abduction at 3:30 pm on September 17th, and the completion of the kidnapping, sexual assault, and murder in time for the defendant to return without the victim "at least one hour before sunset." *Id.* at 595, 832 P.,2d at 612. Apart from the single reference to "when he abducted her", there was no discussion of the relationship between the timing or location of the restraint and the intent.

Thus, none of the Arizona Supreme Court decisions referenced by Petitioner preclude the decision of the Arizona Court of Appeals in his delayed direct appeal. They certainly do not establish that the Arizona Court of Appeals' decision was contrary to "a long-standing and reasonable interpretation of a state statute by that State's highest court." *Garner*, 368 U.S. at 169.

Therefore, this Court must honor the Arizona Court of Appeals' determination that the Arizona kidnapping statute was violated, despite the fact that the jury had found that Petitioner did not form the intent to commit the sexual offense until Petitioner and the victim were in Las Vegas.

Even with that finding, Petitioner was convicted based on proof of "every fact necessary to constitute the crime with which he is charged," *Winship*, 397 U.S. at 364, and was not convicted by the state "for conduct that its criminal statute .. . does not prohibit," *Fiore,* 531 U.S. at 228-229. Thus, Petitioner's Ground 1 (conduct not prohibited) is without merit.

Similarly, Petitioner has failed to show that he was convicted without an essential element being found by the jury, and his Ground 2 (jury finding of intent) is also without merit.

And finally, he cannot show that the Maricopa County Superior Court was without jurisdiction, and his Ground 3 (lack of jurisdiction) is without merit.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed July 9, 2008 (#1) be **DENIED.**

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

Cir. 2003)(*en banc*).

DATED: August 19, 2009   _____
JAY R. IRWIN
United States Magistrate Judge

S:\Drafts\OutBox\08-1268-001r RR 09 04 15 on HC V2.wpd